> ALBANY,
> August, 1815
>
> RIPLEY
> v.
> GRIFTON.

---

## RIPLEY AND OTHERS *against* GELSTON.

THIS was an action of *assumpsit*. The cause was tried at the *New-York* sittings, the 5th *December*, 1811, before Mr. Justice *Van Ness*. a violent gale of wind, put into the port of *New-York*, and was entered at the custom-house, as a ship *in distress;* having conformed to the regulations of the act of congress (*Cong.* 5. sess. 3. c. 128, s. 60.) in such cases, she was condemned, after a regular survey by the *wardens of the port,* as unfit to be repaired, and, under their direction, was sold at public auction, and purchased by *American citizens,* who, at their own expense, afterwards repaired her, and fitted her out for a voyage to *Cadiz:* but the *collector of the customs* refused to give her a *clearance,* unless the new owners would first pay the tonnage duty or *light money* of 50 cents per ton, imposed on all *foreign* ships entering the ports of the *United States.* They objected to the demand as illegal, but paid it, and afterwards, brought an action of *assumpsit* against the collector, to recover back the money so paid. A few days after it was paid, and before the suit was commenced, the collector paid the money into the *Branch Bank of the United States,* to the credit of the treasurer of the *United States;* and no request was made, or *notice* given, by the plaintiffs, at any time, to the *collector,* or other officer of the customs, not to pay over the money, or to pass it to the credit of the *United States.* It was held, that no tonnage duty or *light money* was due, in this case; and, at any rate, it was wrongfully demanded of the plaintiffs, who having paid it *compulsorily,* they were entitled to their action against the *collector* to recover it back, without showing a *notice* to him not to pay it over to the government, especially, as there was no other person against whom the plaintiffs could bring their action.

*Notice* to an agent not to pay over the money to his principal, is not necessary, where the payment is compulsory, and it is not made expressly for the use of the principal.

> A *Spanish* ship, bound from *Havanna de Cuba* to London, having met with

ALBANY,
August, 1812.

RIPLEY
v.
GELSTON.

At the trial, a bill of exceptions was tendered to the opinion of the judge. The following facts were stated in the bill. In *August*, 1809, a *Spanish* ship, called the *Maria Theresa*, on her voyage from *Havanna*, in the island of *Cuba*, to *London*, sustained very considerable injury, by a gale of wind, and put into the port of *New-York* in distress; where she arrived the 20th *September*, 1809, and was entered at the custom-house as a vessel *in distress*. On the 5th *October*, the cargo having been unladen, the officer of the customs, appointed to superintend the unloading, left the ship, which was afterwards condemned by the wardens of the port, as unfit to be repaired, and was sold by the agent of the *Spanish* owner, under the direction of the wardens, to the plaintiffs, on the 10th *November*, to whom a bill of sale, in the usual form, was executed by the agent of the owner, and in his name.

The plaintiffs caused the ship to be repaired, and, on the 5th *May*, 1810, she was cleared at the custom-house for a voyage from *New-York* to *Cadiz*. On obtaining the clearance, the plaintiffs, as *owners* of the ship, were required by the officers of the customs, to pay 266 dollars and 75 cents, tonnage duty and light money for the ship; notwithstanding the plaintiffs, at the time of paying the money, objected to the payment of it, as illegal. The money was passed to the credit of the *United States*, in the cash book of the custom-house, on the 4th *June*, 1810.

The defendant, who is the collector of the customs for the port of *New-York*, within a few days after the 4th *June*, 1810, paid the sum of 266 dollars and 75 cents, into the *Branch Bank of the United States*, in the city of *New-York*, to the credit of the treasurer of the *United States*, which was before the commencement of this suit. No *request* was made, or *notice* given, to the defendant, or any of the officers of the custom-house, at the time of paying the money by the plaintiffs, or afterwards, not to pay over the money, or pass it to the credit of the *United States*.

It is not customary to demand any *tonnage duty* or *light money* of vessels arriving at the port of *New-York*, and entering at the custom-house, as vessels *in distress*; but if such vessels change their voyage, and clear out for a different port from that to which they were originally destined, tonnage duty and light money were demanded, on their obtaining a clearance for such new voyage, though the witnesses for the defendant could not recollect any particular instance in which such demand or payment had been made.

*Baldwin*, for the defendant. 1. The defendant had a right to demand and receive of the plaintiffs, as owners of the ship, the money paid by them for tonnage duty or light money. By the act of congress* (1 *Cong.* sess. 2. c. 30.) imposing duties on the tonnage of ships, a duty of *fifty cents per ton* is imposed on all *foreign* ships or vessels; and on ships or vessels of the *United States*, six cents per ton. None but vessels that have been *registered* pursuant to the act for the registry of vessels,† (2 *Cong.* sess. 2. c. 1.) are deemed vessels of the *United States;* and by the 6th section of the act passed 27th *March*, 1804,‡ (8 *Cong.* sess. 1. c. 57.) a duty of 50 cents per ton, to be denominated *light money*, is laid upon all ships or vessels, not of the *United States*, which, after the 30th of *June*, 1804, may enter the ports of the *United States*, and which light money is to be deducted, levied and collected in the same manner, and under the same regulations, as the tonnage duties. This vessel being *Spanish* when she came into the port of *New-York*, was liable to pay the *light money*, under the act. None but *American* vessels are exempted.

By the 60th section of the act to regulate the collection of duties on imports and tonnage,§ (5 *Cong.* sess. 3. c. 128.) provision is made for any ship or vessel, from any foreign port, compelled by distress of weather, or other necessity, to put into any port of the *United States* to which they are not destined; and on complying with the formalities therein required, the cargo, if unladen, may be reloaded, and the vessel may proceed with it to the place of her destination free of any charge, except for the storing and safe keeping of the goods, and the fees to the officers of the customs, as in other cases. By the 63d section of the same act, tonnage duties are required to be paid to the collector, at the time of making the entry of the ship or vessel, and no permit to unlade the goods can be given until the tonnage duty is first paid.

We contend that although this vessel entered in distress, and complied with the formalities prescribed by the act; yet as she did not proceed on her voyage, or clear out for her original port of destination, she must be liable to pay *light money*. Though tonnage duty, by the 63d section, is required to be paid on the entry of the vessels, yet that regulation is not applicable to vessels entering in distress, who, if they proceed on their voyage again, are not made liable to pay duties. If a vessel, though arriving in distress, breaks up her voyage and enjoys all the advantages of a port of the *United States*, as a place of trade, she ought to pay

ALBANY, August, 1812.

RIPLEY v. GELSTON.

* *Laws of U. S.* vol. 1. p. 144.

† *Laws of U. S.* vol. 2. p. 131.

‡ *Laws of U. S.* vol. 7. p. 152.

§ *Laws of U. S.* vol. 4. p. 279—377.

the tonnage duty or light money, as other vessels. This is the intention of congress, as fairly to be collected from the act. Though the cargo is brought in under the same circumstances of distress, yet if any of it is sold, it pays a duty. The same reason is applicable to the vessel, if, instead of proceeding on her voyage, she is sold. The exemption is to be confined strictly to the case of coming in in distress, and the prosecution of the voyage afterwards; otherwise, vessels might come in, on the slightest pretext of distress, as the loss of a sail or spar, and finding it convenient to sell vessel and cargo, might break up the voyage, and thus gain every purpose of trade, without a payment of the duties.

2. But if the plaintiffs were not liable to pay the duties for this vessel, yet the defendant having paid over the money to his principal, the government of the *United States*, before any notice not to pay it over, or suit brought, he cannot be made liable, nor can the plaintiffs recover it back. The law on this subject is clear and well settled.* And, on this ground, the plaintiffs must fail in their action.

*3 Ld. Raym.
1210. 4 Burr.
1985  2 Cowp.
565.  4 Term
Rep  553
Chitty's Plea.
25.

† Cowp. 204.

*T. A Emmet*, contra. In *Campbell* v. *Hall*,† decided in the court of K. B. in *England*, the money was not paid over to the use of the king, but kept in the hands of the collector, with the privity and *consent* of the *Attorney-General*, for the express purpose of trying the question as to the validity of imposing the duty. That was a proper and dignified course of proceeding on the part of the government. In the present case, he was sorry to see, for the credit of the government of the *United States*, that a different course had been pursued, and an attempt made to screen their right to this money from investigation, by raising the question as to the paying over the money by the defendant to the use of the *United States*.

1. *Light money*, payable by foreign vessels, is directed to be levied and collected in the same manner as the tonnage duty. Both stand on the same ground. By the 63d section of the act for the collection of duties, the tonnage duty must be paid at the time of making entry of the vessel, and before any permit for unlading the goods is granted. The law relative to tonnage applies only to vessels coming in to trade. It is a duty on entry. Vessels forced in by distress are not liable to this duty. After being admitted as a vessel in distress, and having complied with all the formalities of the law, the collector had no right to exact the pay-

ment of light money, whether the vessel sailed to her port of desti- ALBANY,
nation or not. It is said that fraud and collusion may be practised August, 1812.
under the pretence of distress; but the law provides against any RIPLEY
imposition, and it is not pretended, in the present case, that the dis- GELSTON.
tress was fictitious.

Again, a *sea-lettered* vessel pays only six cents tonnage duty; and the defendant has obliged the plaintiffs to pay fifty cents, as if she was a vessel owned wholly by foreiguers.

Admitting that a vessel entering in distress, and afterwards sold, is liable to pay the duty, still, we contend, the plaintiffs, who purchased the vessel at public auction, are not liable to pay it. The collector must have recourse to the original owners.

By the 93d section of the act relative to the collection of duties, a master of a vessel, bound to a foreign port or place, on delivering the manifest of his cargo to the collector, and taking the requisite oath, or affirmation, is entitled to a *clearance.* The act is imperative, and the collector has no right to refuse it. By refusing a clearance in this case, until this *light money* was paid, the payment of it was compulsory on the plaintiffs.

2. The objection that the action does not lie, after the money has been paid over, is *formal.* It does not go to the right and justice of the case. We contend that the action well lies against the defendant, the collector of the customs, in this case. In *Whitbread* v. *Brookbank,*[*] the objection was, that an action for [* Cowp. 66.69.] money had and received would not lie against an excise officer, [S.C. Loft, 529.] for an *over payment.* In *Campbell* v. *Hall,* the objection was not made. In *Stevenson* v. *Mortimer,*[†] an action for money had [† Cowp. 805.] and received was held to lie against a custom-house officer, for an over payment, or excess, of fees. In the case of *Champlin* v. *Bullman,*[‡] which was like the present, an action for money had [‡ Parker's Rep. 198.] and received was sustained against the defendant, the collector of the customs of the port of *Bristol,* to recover back money received as a duty on sails belonging to a *French* prize ship, which the court decided the plaintiff was not bound, by law, to pay. In *Greenway* v. *Hurd,*[§] it was held that the action would not lie [§ 4 TermRep. 355.] against an excise officer, if he had paid the money over to his superior. This objection of the defendant is founded on the cases of *Sadler* v. *Evans,*[**] *Buller* v. *Harrison,*[††] and *Greenway* v. *Hurd.* [** 4 Burr. 1984.] The principles to be deduced from those cases, if attentively ex- [†† Cowp. 565.] amined, are, that this action will not lie, 1. Where the payment is *voluntarily* made to a *known agent,* who is compelled to pay over the

money, and where the principal himself is liable ; 2. Where the money is paid by *mistake*, and there is no *notice* of the mistake, or not to pay over ; 3. Where money is paid to a *subordinate agent*, who is obliged, under a penalty, to pay it over, and actually does pay it over, to his superior officer.    But none of these principles apply to the case of a *compulsory* payment of an illegal demand, and where the officer knows of the illegality.

The defendant is not a subordinate officer.    He is to ascertain what duties are payable, and to receive all moneys paid for duties.*

*Laws U. S.* vol. 4. 279.
*5 Cong.* sess. 3, c. 128. s. 21.

He is to exercise his judgment and discretion, as to the duties payable.    He is obliged to pay over the moneys received *by virtue of the act.*    He is not required to pay over money illegally received, or if the legality of the payment admits of a doubt.    No *notice* is necessary in this case.    The defendant is bound to know the law, and to declare it.    Ignorance of the law in him is criminal.    He must understand it at his peril, and act accordingly.    If he had doubts, and was told that it was an illegal demand, he ought to have applied to the government for instructions, and demanded an indemnity, before he paid over the money.

Where the payment is illegal, the right of action is instantaneous and perfect, on the payment of the money ; but in case of a mere *mistake*, no action lies until notice is given of the mistake, and a demand made of the money erroneously received.    The defendant is the highest and the only officer against whom an action can be brought, and it cannot be in his power, by any *voluntary* act, between him and the government, to defeat the party of his action. If by paying over the money he can avoid all responsibility, he may do so in half an hour after the payment to him.    How is the plaintiff to know when it is paid over ?    Is he to remain ignorant of the fact until the time of trial, and then be surprised and entrapped by this objection ?

*Baldwin,* in reply.    The defendant had some ground, at least, in this case, to demand the light money.    It was not a clear case ; and there was no *mala fides* on his part.    In *Chapman* v. *Bullman,* there was a special verdict, and no objection was made to the act.    In *Whitbread* v. *Brookbank,* Lord *Mansfield* said it would be " a great inconvenience, if an action for money had and received would lie against an officer of the revenue for an over payment."

The true distinction is, that an officer is liable, if he takes money *mala fide ;* but not, if he receives it *bona fide*, or by mistake.

Lord *Mansfield* and Baron *Perrott*, in *Sadler* v. *Evans*,\* both
laid down the principle, that where a payment is made to a known
agent, the action ought to be brought against the principal, unless
in special cases, as under a *notice* or *mala fide. Chitty*† states
the rule as settled, that if money be paid over before notice to re-
tain it, the agent is not liable, except in the case of an auctioneer
or stakeholder. The same principle is recognised by this court, in
the case of *Hearsey* v. *Pruyn;*‡ though the court seemed to think
that the act of the party in calling on a witness to take notice that
the toll was overcharged, was a sufficient notice not to pay the
money over. But the *English* decisions do not support the posi-
tion that such an act or declaration of the party is equivalent to a
notice. A suit brought is sufficient notice ; but an objection to
the legality of the demand is not so. The party may object, but
if he afterwards pays the money, the agent has a right to con-
clude that the objection is waived, unless he has some notice to
the contrary. In *Greenway* v. *Hurd, Buller,* J. said, though the
plaintiff objected, in *June*, to pay the money, yet he seemed af-
terwards to waive the objection.

If the party who pays the money means to resort to the agent
to recover it back again, he ought to give such a notice as would
justify the agent in retaining the money, and enable him to defend
himself against the claim of his principal, or to obtain a bill of inter-
pleader between the parties. The mere objection to the legality of
the demand, would not be sufficient to authorize the agent to require
an indemnity from his principal, or to defend himself against a suit
brought by his principal. Nor is it sufficient to put the agent on
his guard, and oblige him to keep the money for six years, until an
action is barred by the statute of limitations. There can be no in-
convenience, or hardship, in requiring a precise and formal notice
to the officer, or agent, of the intention to resort to him, to recover
back the money paid. Such a notice would prevent all difficulty.
But if a mere objection to the legality of the demand is held to be
sufficient, attorneys, and other agents who receive money, may
be made responsible, after a lapse of years, when their principals
may be dead, insolvent, or removed out of the state.

The defendant is not the superior officer. He acts, with the
naval officer, in subordination to the secretary of the treasury.
But a superior officer is entitled to more protection, for he cannot
sue the government; but an inferior agent may sue his principal.

ALBANY,
August, 1812.

RIPLEY
v.
GELSTON.

\* *4 Burr.* 1986.
† *Chitty on
Plead.* 25.

‡ *7 Johns. Rep.*
179.

ALBANY,
August, 1812.

RIPLEY
v.
GELSTON.

This is an equitable action, and any equitable defence is suffi-cient to defeat it. The defendant acted *bona fide*, in discharge of his duty. The plaintiffs have acted negligently, in not making the proper inquiry as to the liability of the vessel to pay the du-ties, and in not giving the defendant notice, in season, not to pay the money over.

It is said that the duties are demandable only on the entry of the vessel; but as this vessel entered in distress, under the special provisions of the act, it could not have been foreseen that she would make herself liable, by breaking up her voyage, to the payment of the duties.

This was a foreign ship at the time of her entry, and the ton-nage duty must have reference to her character at that time. All vessels, except those belonging to the *United States*, or registered vessels, pay 50 cents tonnage duty, or light money. The act (8 *Cong.* sess. 2. c. 99.) which exempts unregistered ships, own-ed by citizens of the *United States*, from the operation of the act (8 *Cong.* sess. 1. c. 57.) imposing light money, has reference to vessels *bona fide* possessing a *sea-letter*, or regular documents is-sued from the custom-house, proving the property *American*, and entering from some foreign port or place, as sea-letter vessels.

Again, it is said that the plaintiffs, who have purchased this vessel at public auction, ought not to pay this duty. But they are the owners of the vessel; and the duty may be considered as a *lien* on the ship. How could a suit be maintained against the original owner? The collector may detain the ship's papers until the duties are paid; and why may he not detain the ship, or refuse a clearance, in such case?

*Per Curiam.* The principal question here is, whether the de-fendant was authorized to demand the money which he exacted of the plaintiffs, as the tonnage or light money of the ship they had purchased. The ship arrived in the port of *New-York* in distress, and was entered in *September*, 1809, and being con-demned and sold by the wardens of the port, the sum in question was exacted, on the clearance of the ship, on another voyage, in *May*, 1810.

The law (*Laws of U. S.* vol. 4. 384.) requires tonnage to be paid at the time of entry, and no permit to unlade is to be granted

until the duty is paid. This is the general rule on the subject;
and light money on the entry of foreign vessels, is to be levied in
the same manner as tonnage. (*Laws of U. S.* vol. 7. 157.) But
there is a special provision for the case of vessels arriving in dis-
tress. They are to be unloaded free of duty when there is a ne-
cessity for it, and when the goods are reladen, the ship may pro-
ceed " to the place of her destination," free of any other charge
than what relates to the storage of the goods, &c. (*Laws of U. S.*
vol. 4. 377.) The statute does not provide especially for the
case in which the ship so arriving in distress is necessarily con-
demned and sold, and the voyage broken up; but the reason of the
exemption seems to apply. The permit to unload the goods from
the ship, without exacting the tonnage, is an admission of the ex-
ception. If tonnage be not due when the ship so arriving in dis-
tress is repaired, and enabled to renew her voyage, it would be
inconsistent and unjust to demand it, when she was so disabled as
to be incapable of repair, or of renewing the voyage. This would
be to waive the duty in the case of a moderate, and require it in
case of an extreme calamity to the ship. When the plaintiffs
purchased the ship, they did not purchase her with this tonnage
duty as a *lien* attached to her. Suppose her very wreck had
been purchased, and a new ship had been built on the same keel
and with the same name, would any person have thought of the
tonnage duty ? The very entry of the ship in distress and land-
ing of the goods, seems to have put an end to the tonnage duty,
provided there was no collusion or bad faith in the transaction,
and the voyage was interrupted, or finally broken up, from the
necessity of the case.

The tonnage or light money in question was, at any rate, wrong-
fully demanded of the plaintiffs as a condition of the clearance, and
that being established, they are entitled to recover it back in this
action, without showing any notice to the defendant not to pay
the money into the public treasury. The cases which exempt
the agent from the suit, if he has, in the mean time, paid over the
money to his principal, without notice, do not apply. Here is no
person but the defendant, against whom the suit could, in any event,
be brought, and the money was paid by compulsion. It was ex-
torted as a condition of granting the clearance, and not paid with
the intent or purpose that the collector should pass it to the credit
of the *United States.* The case of *Snowdon* v. *Davis,* (1 *Taun.*

ALBANY,
August, 1812.

**359.)** lays down this just distinction, that notice to the agent is not requisite, in the case of a compulsory payment, and one not made expressly for the use of the principal. The plaintiffs are, accordingly, entitled to judgment.

Judgment for the plaintiffs.