## Case No. 11,993.

### The RODNEY.

[Blatchf. & H. 226.] [1]

District Court, S. D. New York. April. 1831.

SEAMEN'S WAGES—ENHANCED WAGES—PROVISIONS—MARITIME LIENS—PRIORITY—COSTS.

1. Where a mate had on board his vessel a private adventure, consisting of provisions, which were used for the necessary support of himself and of the crew: *Held*, that he was entitled to recover, as enhanced wages, the value of the part consumed for his own support, and to be allowed, out of a surplus in court, the value of the supplies beyond his own support.

2. In the disposition of the proceeds of a vessel, different claims are marshalled as follows: (1) Seamen, suing for wages; (2) material men; (3) a consignee, for money advanced for towage, pilotage, light-money and port duties—each claim carrying with it its own costs.

[Cited in The Sailor Prince, Case No. 12,219; The Antelope, Id. 481.]

3. Where parties appear in court, not under compulsion, but voluntarily to protect their own rights, their claims for costs are entitled to only the same priority with their other claims.

In admiralty. The libel in this case was filed in rem, by material men, for necessaries furnished the brig Rodney. A stipulation was entered into by the several parties, that the vessel should be valued at $1,350, and be discharged on the claimant's filing a bond to that amount, which was done accordingly. Afterwards, a petition was filed by other material men, and by the mate and seamen for wages. The mate included, under his charge for wages, the value of some hams on board belonging to him, which were consumed for the necessary support of the crew. The consignee of the vessel also claimed a lien upon her for light-money, pilotage, towage and port duties, advanced by him. The funds in court not being adequate to the discharge of all the claims, a question arose as to the order of priority in their distribution.

BETTS, District Judge. As the proceeds of the vessel in this case are insufficient to meet all the claims, it becomes necessary to settle the priority of payment between the the parties before the court. The following parties claim satisfaction of their demands out of the fund: (1) Seamen; (2) the consignee, for port duties and charges, and other advances; (3) material men. The item objected to in the mate's claim is for provisions furnished by him, amounting to fifteen dollars. The mate had a private adventure of hams on board, and, the crew being short of provisions, the master obtained those hams for the necessary support of the crew. In strictness, such a disposition of the provisions did not amount to the necessary finding by a seaman of his own subsistence, so as to partake of the character of extra wages. Had the mate been obliged to consume the

[1] [Reported by Samuel Blatchford, Esq., and Francis Howland, Esq.]

hams for his own support, he might undoubtedly have been allowed their value in the nature of wages, upon the same principle that seamen recover, as wages, the cost of subsistence, when it is not furnished them by the vessel. 5 Poth. Cont. 393; Cont. de Louage des Mat. § 4, pl. 215; The Madonna D'Idra, 1 Dod. 37. So far as these provisions were necessarily applied to his own support, the mate may therefore recover for them as his subsistence, and thus as part of his wages. But, in strictness of law, for the residue, he would be obliged to come upon the proceeds in the character of a material man, or he might be substituted, in respect to the demand, in place of the master, and would then stand upon the same footing the master would, had he purchased the supplies from the mate, and would accordingly be postponed to creditors having a priority of lien. Nevertheless, as the extra charge is very trivial in amount, and the supply was of imminent necessity to the crew, I do not feel disposed to divide the demand, and shall allow the mate's charge for provisions to pass under the privilege of his wages, as if they had been consumed by himself. Had the claim been brought forward as the one under which the vessel was to be sold, and so as to affect essentially other liens, I might have distributed it into different orders of priority, giving that part furnished the crew no more than its strict legal privileges. The court feels authorized to deal with remnants and surpluses, as against the ship-owner, upon an equity of a more enlarged character than it exercises in administering relief to parties prosecuting their rights by action. Gardner v. The New Jersey [Case No. 5,233]. All fixed, legal priorities will be observed in such cases, as a general rule. Still, the obligation to observe them will not be so controlling as not to leave it to the discretion of the court to give precedence, in fit cases, to a demand which ordinarily would take a secondary or inferior place. This consideration is not to be overlooked, particularly when the ship-owner, the real debtor, is seeking of the court the favor of taking the proceeds of his ship from the registry; and, as all the present suitors are appealing to the equity of the court to transfer to them those funds, instead of permitting the owner to obtain them, it seems not unreasonable, in this particular, to deal with them as the owner himself would be dealt with. The mate, then, will be permitted to tack this small claim to his more considerable demand for wages, and have the same order of payment prevail as to both.

It is very manifest that the contestation between the parties is not founded upon the question of the privileged character of this portion of the mate's claim more than of the whole of it. The merits of the controversy relate to the order of priority which the respective demands may be entitled to claim. The claims before the court are of four de-

scriptions: (1) Wages of seamen; (2) port charges and duties paid by the consignee; (3) work and materials performed and furnished by laborers and material men whilst the vessel lay at quarantine; (4) the costs of the respective parties and of the officers of court. The question is, in what order the proceeds in court shall be marshalled to meet these various demands. It is to be observed, however, that, in disposing of the points, the court does not assume the jurisdiction of a court of chancery, to compel parties to submit to a marshalling of assets, in the usual acceptation of that authority; but it inquires into and determines in what order, upon the principles of the law maritime, these several demands would have been chargeable upon the vessel had the suits been against her, or upon the owner had the actions been in personam.

1. Seamen's wages take the highest place in the scale of privileges. Seamen are the most essential and the most meritorious of all who contribute to the support of navigation and trade. The well-established rules of the maritime law seem to give them a precedence over all other creditors. The French ordinance (liv. 1, tit. 14, art. 16) provides, that when the value of the ship shall not be sufficient to discharge all claims upon her, seamen's wages shall be preferred to all other charges. See, also, Val. Comm. This is changed by specific legislation in France. The Code of Commerce makes an arrangement of privileges which postpones that of seamen to many others not recognised by the general law maritime as entitled to priority. Code de Com. art. 191. Sir William Scott secured the preference to seamen over the holders of a bottomry bond (The Favourite, 2 C. Rob. Adm. 232), and, at a more recent day, re-affirmed the principle by a strong expression of opinion in favor of seamen (The Sydney Cove, 2 Dod. 13). The supreme court of the United States have, incidentally, given the same character to the claim for wages. Blaine v. The Charles Carter, 4 Cranch [8 U. S.] 332. The fund will, accordingly, be applied to the satisfaction of the wages of the seamen and of their taxed costs, before the material men are paid.

2. The consignee, having paid light-money, towage, pilotage and port duties, claims a lien on the vessel for his reimbursement. These disbursements were manifestly indispensable to the entry of the vessel into port; and, if there be a well-founded doubt whether, upon the general principles of the maritime code, a superior privilege for their satisfaction can be maintained, it may have to be denied, unless it is recognised by regulations of positive law. The privilege is explicitly given by the French Code, and is assigned, in order of priority, a rank above that of the wages of seamen. Code de Com. art. 191. The privilegium of the civil law, however, had respect only to credits given the vessel per se, or to those demands which, from their character, imported that the vessel was looked to for satisfaction, such as those which arose from services or materials furnished in her construction or refitment. Dom. Civ. Law, bk. 3, tit. 1, § 5; Nov. p. 97, c. 3; Dig. 20, 4–6; Id., 42, 5, 26. Port duties are nowhere recognised in the English jurisprudence as one of those claims which the admiralty will enforce, or which have any other existence than what may be given to them by the revenue laws. In Ripley v. Gelston, 9 Johns. 201, the supreme court of this state incidentally allude to light-money and towage as claims having a lien on the vessel; but the point under consideration did not require that particular to be decided, and the expression was probably used rather to designate what was matter of rightful charge or claim, than to qualify its rank or efficiency. The revenue laws do not attach the demand specifically to the vessel. She is not admitted to entry, nor can her cargo be admitted or unladen in port, or the vessel depart, without the payment of port charges. Act March 2, 1799 (1 Stat. 627). And possibly the act, which thus raises an indebtedness or responsibility, might enable the United States to seek its satisfaction by process in rem against the vessel. Yet that would be merely an incident to the comprehensive remedies possessed by government for the collection of its revenues, and would not necessarily go over to a third party who should discharge the demand. There being no novation provided by statute, a court of admiralty would not supply it, unless the equities were of an exceedingly high and urgent character. The payment cannot be considered as made to save the vessel from forfeiture, and as entitled, on that account, to special distinction, or as imparting to the one making the payment the priorities possessed by the government in respect to the demand. If a lien existed in favor of the United States, by virtue of the indebtedness, most clearly no forfeiture followed the failure to satisfy the lien. Forfeitures are never implied. They are, in relation to the revenue laws, creatures of statute. All that the vessel could have been subjected to, if the consignee had not interposed, would have been an action for the recovery of those dues and of the costs of such action. Had there, however, been a forfeiture, the claims of the seamen for wages would have taken priority over the rights of the United States accruing under such forfeiture. The St. Jago de Cuba, 9 Wheat. [22 U. S.] 409. The remedy of pilots and wharfingers would be no greater than that of the United States, and, accordingly, if the consignee, by satisfying those dues, was entitled to the privileges of the original creditors, their demands would not overreach the claims of seamen. The claims of all parties, therefore, to priority over the seamen, are disallowed.

3. The accounts of the petitioners who furnished necessary supplies and labor to the

vessel at quarantine, are entitled to be paid previous to the claims of the consignee for duties paid on the cargo. Had the government sought satisfaction of duties out of the fund in court, its demand must have been paid in preference to the claims of the material men. The duties had accrued and become payable before the debts to the material men were incurred. The government, therefore, stood first in equity, independent of the consideration of its prerogative rights. It is not necessary to inquire what would have been the rule had the liens of the material men existed when the vessel came into port. Their credits were given to the vessel after she had become chargeable with duties, and, as against the government, they could not equitably ask to have that liability postponed on their account, as their services were not necessary to put the vessel in a situation to create and incur those duties. She had completed her voyage when their debts were incurred. But the consignee of the ship only cannot possess himself of the advantage of the government priority. No act of congress transfers that privilege to a party who receives the ship or cargo, and discharges the duties. Such payment by him would be esteemed voluntary, or to have been made out of funds of the consignor. In this instance, the consignee has not the equity of a consignee or shipper of goods who could not land the cargo without satisfying the duties. In such a case, the cargo might be perishable, and he might be compelled to make the advance immediately. Here the vessel was in ballast, and the consignee could pay, or omit to pay, at his option. Although the court might refuse to pay over the fund to the owner, before this demand was satisfied, yet the consignee is not entitled to any priority over other creditors in its distribution here.

4. It is contended, that all necessary parties who have been brought into court by force of the proceedings here, are entitled to their costs out of the fund. The intervention of all the parties has been voluntary. No one has been coerced to appear. It is, therefore, unnecessary to inquire what remedy the court would afford a party who had been wrongfully compelled to appear and answer. Where no attachment against the person is sued out by the promovent in an admiralty cause, it is wholly optional with parties whether they intervene or not. If they make themselves parties, it is to protect or enforce some right of their own in the subject matter of the suit. Their relief in regard to costs, then, ought to be only commensurate with and dependent upon their relief in regard to the subject of contestation. That rule will accordingly be now observed. The seamen will recover their wages and costs in full, the material men their demands and costs out of the residue, and the balance, if any, may be paid over to the consignee.

Let the clerk report the amount due to the respective parties, and tax the costs, and, on the confirmation of his report, let payment be made in conformity to these principles.