## Case No. 9,471.

### MERRILL et al. v. RINKER.

### [Baldw. 528.] [1]

### Circuit Court, E. D. Pennsylvania. Oct. Term, 1832.

PERSONAL PROPERTY—BAILMENT—TITLE—ACTION TO RECOVER—WITNESS—PARTNERS—IN WHOSE NAME ACTION TO BE BROUGHT.

1. A receives goods from B and C, on an agreement that A should take them for sale from place to place, to pay the invoice price for such as were sold, to return those unsold and be credited with the amount at the prices charged, A to receive the surplus of what was sold over the invoice price. *Held*, that such agreement is not fraudulent in law, if not so in fact.

2. The goods were put up in New York, and brought to this state for sale, where they were attached by the creditors of A, for debts due before the agreement. A returns to New York, returns the invoices and abandons the goods to B and C, who rescinded the contract. *Held*, that A was a competent witness in an action for taking the goods.

3. B and C could recover in trover for taking them, if the contract was not fraudulent.

4. A and M were partners when the goods were invoiced, before the contract, M sold his interest in the partnership effects to B. *Held*, that A and B could sustain the action.

5. Reputed ownership in A, under such a contract, does not justify a creditor of A in taking the goods, unless under the statutes of bankruptcy.

[Cited in Blackwell v. Walker. 5 Fed. 422.]

6. Possession of goods by any other than the real owner, is neither fraudulent or a badge of

[1] [Reported by Hon. Henry Baldwin, Circuit Justice.]

fraud, if the want of possession is fairly accounted for, and there is no fraud in fact.

[Cited in Almy v. Wilbur, Case No. 256.]

[Cited in Stevens v. Works, 81 Ind. 451.]

This was an action of trover, brought against the sheriff of Lehigh county, under the following circumstances: Thomas W. Viles was an insolvent debtor, who had been discharged under the insolvent law of New York in 1828. Merrill & Minikin were merchants in New York, to whom Viles applied for goods to trade on, which they agreed to furnish him on these terms; an invoice of the goods delivered was to be made out, Viles to sell them at the invoice price, and not less, he was to receive the overplus for his trouble, to return what he did not sell and be credited for them, and to pay the invoice price for what he sold. Under this agreement goods were laid off, and were packing, from the 25th February till the 5th March, 1830, amounting by the invoice to 1328 dollars, and delivered to a wagoner employed by Viles, who took them to Easton in this state, where they were attached by his New York creditors, Viles immediately returned to New York, delivered back the invoice to Merrill, and abandoned the concern; Merrill accepted the invoice, and rescinded the contract; the goods were afterwards taken to Allentown, where they were sold by the defendant, on process by the creditors of Viles, who indemnified him. On the 5th of March, 1830, Minikin sold out his interest in the firm of Merrill & Minikin, to Foster, one of the plaintiffs. Merrill & Foster were the only partners in the firm, the business was carried on in the name of E. Merrill, agent. Viles received the invoice on the 6th of March, made out in the name of Minikin & Co., dated 25th of February, Merrill struck out this date and inserted 6th of March, he also struck out Minikin & Co., and put in E. Merrill, agent; thus altered it was delivered to Viles. The invoice was copied from the books of the plaintiffs, where it was entered, the invoice in the book and copy was headed, "Merchandise, consigned to J. W. Viles by Merrill & Co.," and altered as above. Minikin & Co. had previously had similar transactions with Viles, who settled for them on the terms above stated, and was credited with the goods returned unsold. The plaintiff's agent demanded the goods from the defendant before sale, who refused to deliver them, saying he was indemnified. The debts of Viles, for which the goods were sold, were due before his discharge.

At the trial, Viles was offered as a witness by the plaintiffs, to which Mr. Wharton and Sergeant objected on the ground of interest, inasmuch as he is liable to the plaintiffs for the value of the goods, an agent may be admitted from the necessity of the case, but here there is no agency.

BY THE COURT: The jury must decide whether Viles is an agent, factor, or purchaser of the goods, as between plaintiff and defendant. But as the plaintiff has rescinded the contract, and accepted a re-delivery of the invoice, with an abandonment of the goods by Viles, he cannot consider Viles as a purchaser, nor can he look to him for the goods as his agent, where they have been taken from him by process which he could not resist; so that he has no interest in the suit. The bringing the suit, is an affirmance of Viles's being a consignee, in which capacity he is answerable only for negligence, or a violation of the terms of the consignment, neither of which is in evidence. 2 H. Bl. 590, 591. The objection was overruled, but the plaintiffs did not call the witness till they produced a release to him from plaintiffs.

T. Bradford and J. R. Ingersoll, for plaintiffs.

The transaction was a fair and real one, made bona fide, without any intention to give Viles a false credit, or injure his creditors, the effect of which was to make Viles the special agent, factor or consignee, with power to sell at prices limited, and with a right to return the goods unsold to the plaintiff. He was not a purchaser of any goods remaining unsold, nor was he a debtor to the plaintiffs except for what he did sell; the seizure by the sheriff prevented a sale or re-delivery according to the terms of the consignment, so that the property of the goods remained in the plaintiffs. It was competent to them and Viles to rescind the agreement, by which the rescission related to the delivery of the goods. Salte v. Field, 5 Term R. 211, 213. Viles having no interest in the goods, unless they sold for more than the invoice price, was not a partner of the plaintiffs, his only claim was in the nature of a commission, or compensation for his services in selling: he had no interest till a sale. Miller v. Bartlet, 15 Serg. & R. 137; there was therefore nothing to be taken on an attachment against the property of Viles. No property passed by the delivery, till the contract was consummated by complying with the conditions, though it had not been rescinded or a partial payment refunded. Marston v. Baldwin, 17 Mass. 606, 610. If the interest in the profits is merely in payment of services, it makes no partnership (Dry v. Boswell, 1 Camp. 330; s. p., Wish v. Small, Id. 331, cited); so if a broker is employed to sell and is to receive all that the article sells for beyond a certain sum fixed by the plaintiffs (Benjamin v. Porteus, 2 H. Bl. 590, 591; s. p., 15 Serg. & R. 119). Viles could not have sold these goods to pay his old debts, neither could he have pawned them; such acts by a factor would not charge the property, so as to divest the right of plaintiffs. Martini v. Coles, 1 Maule & S. 140. The assignment by Minikin to Foster of his stock in the firm, gave the latter a joint interest in the goods, so as to authorize this suit in the names of Merrill & Foster. They had

a right of stoppage in transitu, Viles was their bailee, whose possession was theirs, which is sufficient to maintain trover against any one who takes them out of his hands (Thorp v. Burling, 11 Johns. 285; 1 Maule & S. 140; 16 Johns. 74; 1 Johns. 472, etc.), there was a conversion here, no demand was necessary, but if necessary a demand by an agent is sufficient, (3 East, 381). By the terms of the contract, the plaintiffs retained their right to the goods, which were bailed to be sold on special conditions, limiting the price, stipulating for their return at all events if not sold; it was a special consignment in the nature of a conditional sale, by which the general property remained in the plaintiffs, subject to the right of selling at the invoice prices. Though this was not in the ordinary course of factorage transactions, yet it was so in its incidents, and the relative position and rights of the plaintiff and Viles; third persons were in no worse condition than if it had been an ordinary consignment, as the only peculiarity in it was the mode in which Viles was to account for the goods intrusted to him.

The turning question is on the good faith and fairness of the course of dealing between the parties; though the jury should find it to have been fraudulent, collusive, or a mere colour to cover an absolute sale to injure creditors or purchasers, or to give Viles a false credit, there is nothing in the transaction to make it so, as matter of law. Cases of reputed ownership merely, without any badge of fraud, arise only under the English statutes of bankruptcy. Though there was a delivery to Viles, it was conditional, so that any violation of the terms by Viles would rescind the contract from the time of delivery; the same effect would be produced if any third person should take a tortious possession of them, thus preventing Viles from selling pursuant to the condition. The plaintiff therefore had, at the time of the conversion, such property and present right of possession, as is sufficient to maintain this action. 1 Johns. 472; 15 East, 609. Here the property was unchanged, the specific goods entered in the invoice, were the same which were taken by defendant, and the right of property remained in plaintiffs. 2 Ves. Sr. 582, 585; 1 Atk. 232; 3 P. Wms. 185; 2 Esp. 578, 579.

T. I. Wharton and Mr. Sergeant, for defendant.

1. The transaction between the plaintiffs was in substance a sale on credit, but disguised so as to give it the appearance of a consignment or agency. Viles had the uncontrolled possession, with power to sell, not as a bailee, but as the owner of the goods, it was not a case of factorage, as Viles was liable for the invoice price as soon as he sold. Where property is delivered to another to be returned specifically, it is a bailment, but if an equivalent in kind, or any other may be returned, it is a sale. Jones, Bailm. 102; Story, Bailm. 193; 7 Cow. 752; 4 Cow. 752; 19 Johns. 44; 2 Kent, Comm. 464; 1 Rand. (Va.) 3. The option of re-delivery or paying the value, distinguishes a loan or bailment from a sale. 2 Wheat. Selw. 1052. Though the statute 21 Jac. 1, does not extend to a factor, yet if goods are in the hands of a retail dealer, to be sold or returned, they pass to his assignees as a case of reputed ownership. 2 Camp. 83; Bull, N. P. 42; 2 East, 117, 125. Where goods were sold to be paid for in thirty days, or warehouse rent to be paid, the property was absolute in vendee, though there had been no delivery, 1 Camp. 513. Here was an actual delivery and removal of the goods out of the control of the vendor, Viles was in full possession as owner, with assent of plaintiffs, this is evidence of property till the plaintiffs make out the property to be in them clear of all doubt. 5 Serg. & R. 275. Plaintiffs could not reclaim the property or countermand the authority to sell, Viles pays all charges and expenses, and has no lien on the goods; these circumstances divest the case of every feature of one of factorage or agency, nor is it a case where the plaintiffs had any right of stoppage in transitu. The delivery was complete, Viles's power over the goods absolute, and there was no insolvency between the sale and their reaching their destination. So that the right of stoppage did not exist. Rop. Vend. 189; Abb. 374; Holt, 498; 2 Wheat. Selw. 1052; 2 East, 125.

2. Viles was a partner by having a right to the profits (Gow, 15, 19); third persons had a right to so consider him (17 Ves. 404; Rosc. 89; 19 Ves. 461), and to seize the goods in his possession.

3. To support trover the plaintiff must have actual possession, or such property in the goods as gives him the right of present possession, absolute or qualified. 1 Chit. Pl. 150; 2 Wheat. Selw. 1050, 1051, 1057. A landlord cannot have trover for goods leased during the term (7 Term R. 9, 11; s. p., Corfield v. Coryell [Case No. 3,230]) because he has not a present right of property; otherwise, if the lease is void, as if made to a feme covert (15 East, 607). Here the plaintiffs had neither property, possession or a present right of possession.

BALDWIN, Circuit Justice (charging jury). Whether by the contract between the plaintiffs and Viles, there was a sale or a special consignment to the latter, of the goods in controversy, depends mainly on the intention of the parties. If the contract, as testified by the witnesses, and entered on the books of the plaintiffs, contains their whole agreement, as truly understood and intended by both parties, it is no sale in law or fact, on the other hand, if the real object was a sale, under the cover of a former consignment, then it was a sale and not a consignment, however it may have been entered on the books, or stated to the witnesses. This is

a matter of fact for your consideration, should you find the transaction to be a consignment, you will inquire whether it was fairly and honestly made, with no other object than has been stated or shown in evidence, or is evident from its nature; or whether it was done to enable Mr. Viles to defraud his creditors, to give him a false credit, or hold him out in false colours on the credit of the goods. Should you think that the goods were delivered for either of such purposes, it was fraudulent as to creditors and third persons, whether it was a sale or consignment, and your verdict ought to be for the defendant. Should you think that the contract was made fairly and honestly, as a special consignment, to enable Viles to support himself and family, your verdict will depend on whether it is fraudulent in law, though not in fact. Fraud in law, is the commission of an act prohibited by the words or policy of the law, or where certain acts are deemed full evidence of fraud and fraudulent in themselves, though not so intended; cases of reputed ownership do not come within this rule, they arise only under the positive provisions of a bankrupt law, by which a person in possession at the commission of an act of bankruptcy, of goods with the consent of the true owner, is declared to be the reputed owner, and the goods pass to his assignees, in the same manner as if he was the real owner. In cases not within the statutes of bankruptcy, there must be something more than merely reputed ownership in the person in possession of goods, to effect the right of the real owner; something inconsistent with the nature of the transaction, the dealings between the parties, or some badge or evidence of fraud, intended or tending to injure others. 9 Johns. 201.

As a general rule, the possession of personal property is evidence of ownership, but if from the nature of the case, possession is necessarily in one person, and the ownership in another, it is neither fraudulent in itself, nor a badge of fraud; a possession for a special purpose, by a person for the use, by the orders, or in the transaction of the business of another in its usual course, does not make the property liable to an execution or attachment for the debt of the holder. Such a possession is not within the principles of the statutes, or common law, for the suppression of fraud; if the contract is fair and honest, the possession consistent with its nature, terms and intention of the parties, then as the want of possession by the real owner, is fairly accounted for, his rights cannot be affected by a third person. After an absolute sale of goods, possession by the vendor is prima facie evidence of fraud, which must be rebutted; if the sale is conditional, the retention of possession by the vendor, till the condition is complied with, is no evidence of fraud. Goods consigned to a factor, an agent, or delivered for a special purpose, cannot be taken from the true owner; if the conduct of the parties is consistent with their contract, and that in its terms is fair and honest, no fraud is imputable, its form is immaterial, whether it is in the shape of a consignment, a conditional sale, or partakes of the character of both, according to the true intention of the parties. Vide 9. Johns. 337, 338, and cases cited, 5 Serg. & R. 278. In this case the contract was a special one, giving Viles power to sell at invoice prices, but binding him to return the goods if not sold; as between him and the plaintiffs, this did not vest the property in him by the delivery, he was their agent while the goods were in his possession, and when he sold them was their trustee for their invoiced price. Before a sale, the creditors of Viles had no more right to seize the goods, than if they had been in the warehouse of a factor or commission merchant; from the nature of the contract Viles must have the possession and control, and while he was acting pursuant to the contract in good faith, his creditors had no right to take the goods. Any reputed ownership from possession, and selling the goods as his own, would not justify their seizure for an antecedent debt; though a person who, trusting to the visible ownership, had given him a credit, might set off his debt against a claim by the plaintiffs for the goods purchased. 7 Term R. 359, 361. As a question of law therefore our opinion is, that the agreement between Viles and the plaintiffs, was not fraudulent in itself as against the law; you will decide whether it was fraudulent in fact or intention; if you negative fraud, then the contract is valid in law, either as a consignment, or a conditional sale. It has been contended that Viles was a partner, and the goods liable to seizure for his debt; but even admitting that the contract created a partnership, a creditor of an individual partner has no right to sell the partnership property; he can sell only what belongs to the debtor partner, after paying the debts due by the firm, and his own debt to the firm. An execution, an attachment, or act of bankruptcy, may dissolve the partnership, but gives no authority to force a sale of the joint stock, before the share of the debtor partner is ascertained; what belongs to the creditors, or the solvent partners of the firm, cannot be appropriated to pay the private debt of a partner.

It is objected to the plaintiffs' right of recovery, that they have no joint interest in the goods, or possession in law or fact, sufficient to sustain an action of trover. If you are satisfied that in point of fact, Minikin had transferred his interest in the partnership effects to Foster, before the commencement of this suit, then in point of law the plaintiffs have a joint interest in the goods. Whether the plaintiffs have such possession or right of possession as will sustain

this suit, depends on your opinion on the question of fraud in fact; if you think the contract was colourable, intended as a cover for fraudulent purposes, the action must fail. But if you think the contract was in good faith, made for the purposes stated, the conduct of the parties consistent therewith, without any intention to defraud third persons; then, as no rule of law or policy is violated, the plaintiffs had the right of possession, against any person who converted the goods to his own use, while the contract was in the course of execution, according to the true intention of the parties; they have the legal possession, and may recover in trover the value of the goods, with interest from the conversion.

Verdict and judgment for the plaintiffs.