Withers, J.
delivered the opinion of the Court.
Upon the hearing of the argument in this case, the Court was given to understand that the evidence on Circuit exhibited the fact that the Sheriff grew angry in the course of an altercation between himself and the plaintiff, touching the items of the account which form' the basis of this action. It would seem, also, that the plaintiff was resident in a distant portion of the State; and I think the fact is sufficiently apparent that he was among strangers, and was required to pay *260 the disputed items of the account of Durant before his negro would be delivered to him.
Here, then, we have a case in which a Sheriff had possession of a runaway slave, whom, by negligence, he had permitted to escape from Jail, and had incurred a considerable expenditure in his recapture — and when the owner applied, he was required to pay, as a condition precedent to the delivery of his property, that expenditure which arose from the Sheriff’s own negligence; and denying the obligation to pay, yet, to regain his property, he did so. Whether these facts, or any of them, may disappear, or be materially modified upon a trial to be had, they seem, at any rate, to be established prima fade, and must be assumed, for the present, as characterizing the case.
The plaintiff was non-suited on the Circuit, and I am to inquire whether there be error in that. The question is, was Alston’s payment, under the circumstances mentioned, voluntary, in the legal sense, and therefore covered by the maxim volenti non fit injuria ? It will appear hereafter that we attach much consequence to the fact that the party defendant here was a Sheriff, and, as it appears to us, should be regarded as acting colore officii, and not virtute officii, in demanding and receiving a sum of money to which he was not entitled.
In my opinion, however, there is both reason and authority for the principle, as applicable to persons in their private individual relations, that if undue advantage be taken by one of another’s situation, the first having property of the last in possession, which he illegally retains and refuses to deliver unless a sum of money be paid to him to which he has no legal or conscientious right, this is a fraud, a species of compulsion,, and the money ought to be recoverable.
As an illustration, take the case of Astley against Reynolds (Strange, 915). The plaintiff in that case had, in the month of August, pawned with the defendant certain goods, for an advance of £20, nothing being said in their agreement about interest. In October the plaintiff applied to redeem, and the defendant demanded £10 as interest. Plaintiff tendered £20, and £4 for interest, knowing the latter sum to be beyond the legal rate. The defendant, adhering to his demand of £10 for interest, and the plaintiff, perceiving that the payment of it was the only means of inducing the pawnbroker to restore his goods, paid the whole amount demanded. He was allowed to recover back the excess over the legal sum payable for interest, upon the ground that he had parted with his money by compulsion, and it was then thought that the maxim volenti non fit injuria was applicable only where *261 the party had a legal right of exercising his will. It was remarked that the party might have had such an immediate want of his goods that an action of trover would by no means have served his purpose. However important this consideration might be if the action were on the case for damages, it could in no wise affect his right to recover a specific sum, whereof he had been spoliated.
In Shaw v. Woodcock, (14 Eng. C. L. R. 18,) assignees of a bankrupt had gained possession of certain policies of insurance, upon which the bankrupt had been constituted an agent to receive annuities. The plaintiff, desiring to regain possession of the policies, applied through his attorney to the assignees for that purpose, who refused to deliver them unless they received £715 5s. 7d. which they claimed as a lien (which turned out to be not rightful,) for advances by the bankrupt. The attorney paid the sum demanded, stoutly contending that it was an unrighteous demand — the action was to recover the money so paid. Bailey, J. held as follows : “If a party has in his possession goods or other property belonging to another, and refuses to deliver such property to that other unless the latter pays to him a sum of money which he has no right to receive, and the latter, in order to obtain possession of his property, pays that sum, the money so paid is a payment made by compulsion, and may be recovered back.” Holoryd, J. said: “Upon a question whether a payment be voluntary or not, the law is quite clear. If the party making the payment is obliged to pay, in order to obtain possession of things to which he is entitled, the money so paid is not a voluntary but a compulsory payment, and ■may be recovered back; and if the plaintiff below, therefore, was compelled to make the payment in order to get the policies of insurance, whether there was a pressing necessity or not, he has a right to recover it back.” It is fairly to be inferred, from the circumstances of this case, that there was nothing merely pretensive in the claim of the assignees, for besides the obligation to be diligent as trustees, it is very probable that they believed the claim to be well founded.
The foregoing were cases wherein the one party sought to regain possession of valuable property — which, however, for an adequate consideration, he had voluntarily placed in the custody of another.
I find a case of a somewhat different description, in the 9th Eng. C. L. It. p. 232, Morgan v. Palmer, which may throw additional light upon the position assumed. Morgan, for renewal of license as a publican, paid to Palmer, Mayor of Bristol, 4s. fee. No complaint appears to have been made — no *262 protest — for it is probable all parties supposed the transaction proper. It was decided that this was not a voluntary payment, and was recoverable, although it was proved that until the time of Queen Anne the chief officers of the corporation were two bailiffs, who granted such licenses and received such fee as that in question, and that various charters had confirmed to them all the fees that had been received by them; that by statute of Anne, all fees payable to the bailiffs were made payable to the Mayor, and the fee in question was proved to have been regularly paid for 65 years. It was adjudged that this right to the fee was not one founded on immemorial usage, as licenses were not granted till the time of Edward VI., and therefore that defendant, acting as Justice of the Peace, was not entitled to the fee paid. That the payment was not voluntary, so as to preclude the plaintiff from recovering in this action of assumpsit. In Smiths case, Loft’s Rep. 753, the Postmaster of Hungerford sent to Smith’s house a letter addressed to him, and an extra penny was demanded, in consideration that the letter had been carried to the party’s quarters (which demand, I infer, was usual, as it seems most reasonable). Smith at first refused the sum demanded, but not being able to get the letter otherwise, he finally paid it; and was allowed to recover it back.
I shall now cite two cases from the New York reports, which will come quite as near to the question before us: Ripley et al. v. Gilston, 9 John. 201; Clinton v. Strong, Ib. 370. In the first, a Spanish ship, bound from Havana to London, arrived at Néw York in distress. By order of the proper authority she was condemned as unseaworthy, and was accordingly sold, and bought by the plaintiffs, who were American citizens. When she had been repaired, and was cleared by them at the Custom House, for a new voyage on their own account, light money, at the rate of 50 cents per ton, was demanded by the Collector, and though resisted by the plaintiffs, they nevertheless paid it, in order ¡to obtain a clearance. The question was doubtful whether, jinder the Act of Congress, the demand was lawful or not •, but it was adjudged to be unlawful, and though the Collector had, without notice to the contrary, passed the money to the credit of the Treasurer in the Branch Bank of the United States, he was held liable to refund it to the plaintiffs in an action in assumpsit. The case was considered as one of extortion, though it is manifest that the question of right was by no means a clear one under the legislation of Congress. The point as to whether the payment was voluntary, was not noticed by the Court, for it seems not to have been con- *263 eeived by the Court or by Baldwin (for the defendant,) that there was any escape upon that ground.
In the second case, the ship Jane Barnes sailed from Liverpool, Dec. 2d, 1810. At that time, the proclamation of the President of the United States, (which was a part of the non-intercourse system of that period,) dated Nov. 2d, 1810, was not known at Liverpool. The Jane Barnes arrived at New-York on 18th Feb. 1811, and next day ship and cargo were seized, as violating the non-intercourse Acts: on 27th Feb. 1811, a libel was filed against them in the District Court of the United States. By virtue of an Act of Congress of 2d March, 1811, the ship and cargo were wholly released, so far as the Custom House authority was concerned. Plaintiff demanded delivery from the Marshal, who replied that he could not comply until certain fees of officers of the District Court (accruing, as he insisted, from the seizure,) were paid; and among others, a bill of defendant for $31, Clerk’s fees, which the plaintiff paid, and showed the receipt of defendant. For him it was contended that the fees had in fact accrued, and were legally payable; and one would conclude the argument was stronger for him on this head than for the defendant, in the cause now before us. It was contended that, at any rate, the payment was voluntary. And last of all, protection was sought under the maxim interest reipublicce ut sit finis li-tium; for it was said the cause was pending in the United States Court, and the defendant had redress against the payment of the demand in that jurisdiction, where the cause was pending. All the grounds of defence were overruled, and as respects the point under consideration, it was announced as follows: “ The payment of the costs could not be considered a voluntary act. They were exacted by the officer colore officii, as a condition of the delivery of the property. It would lead to the grossest abuse to hold payment, under such circumstances, a voluntary payment, precluding the party from contesting it afterwards.”
In this connection I would refer also to the case of Elliott v. Swartwout, 10 Peters, 138, which I forbear to abstract, remarking only that the two cases from Johnson, before referred to, were cited also by Justice Thompson, and approved, as resting upon a principle distinguishable from that class of cases wherein a plaintiff is estopped, upon the footing of voluntary payment. It is to be observed, also, that in the case last cited, though the plaintiff paid the money as duties which he denied to be due, in order to get his goods, he was allowed to recover it back, though he might have obtained them by means of a bond, with surety.
*264 I think, therefore, there is warrant enough, upon authority, to say, that where one man, in any capacity, avails himself of the possession of another’s goods, to wring from that other an unlawful payment of money, as the condition, and the only one, upon which the goods will be restored, such payment shall not be voluntary in the eye of the law. The cases upon this subject but re-enforce sound reason. If one does a voluntary act, he exercises his free will. Where is his freedom of will if another unlawfully presents to him an alternative, leaving him only the choice of two evils, both of them unjustly and illegally imposed upon him by that other? One has a casual advantage over another, sets up a demand which the law condemns, as a condition upon which that other shall be re-invested with his rights — he presents, in other words, against law and against conscience, the horns of a dilemma, and gives his adversary a perfect freedom to impale himself upon the one or the other. It does not seem sensible to say that the choice permitted to a victim in such case presents an instance of volition.
Many cases might be supposed of a character very likely to occur, which would, illustrate the proposition which I have announced. Suppose a shipwright, having completed a vessel for his employer, refused to deliver her upon receiving, or tender being made of all he might be legally entitled to, and the employer, yielding to a paramount consideration arising from a contract of charter, complied with an unrighteous demand, that he might fulfil his own contract and avoid greater loss — could this be less than extortion ? If it would be that, there is no room to doubt that money so obtained is recoverable back. So, indeed, Gibbs, J. very well asserted, in Brisbane v. Dacres, 5 Taunton, 160.
Suppose the Sheriff had officially collected the plaintiff’s money, and incurred expense in regaining it, upon a negligent loss of the same, and required the plaintiff to reimburse the expenditure, and he had done so to get his money, would not the case be palpable ? More strongly does all that has been said apply where he who effects such objects by such means as have been set forth, is a Sheriff, and acts, as we think the defendant in the present case did, under the guise and' sanction of his office. He produced the items which are confessedly claimed contrary to law, in a bill tendered in his character as Sheriff — in connection with such as rvere legitimate — the vouchers adduced to show the expenditure for which he claimed reimbursement, were in his name as Sheriff, to wit, advertisement, reward, &c., and the whole bill was acknowledged to have been paid to him as Sheriff. To *265 enforce his .claim, right or wrong, he had possession officially of the. slave of plaintiff, who came from a distant part of the State for his property, and who made known his want of ready means to meet the demand — and his note seems to have been refused as a substitute for the lien resulting from possession, at least for legal claims. How can it be said that •the .parties were on terms of fair equality ? For all essential results, here was a public officer acting as a Judge in his ■own case, with power to enforce his judgment, nr else -to ■•drive the adverse party to a much greater sacrifice, it may be, and thus wresting from the citizen a sum of money which ex cequo et bono he could neither receive nor retain. There must be a clear difference between the case of a public officer withholding, of his own mere motion, the rights of a private •person, and a demand of one private citizen against another, with no power beyond the ordinary modes of legal proceeding to vest and enforce it, acquiesced in, though unlawful.' We shall feel more the force of the distinction when we remember the duty of Judges to observe the solicitude manifested by our whole course of legislation to withdraw the ancient, honorable, and important office of Sheriff from that temptation to extortion or oppression from which it can scarcely altogether escape. The observation is intended to be a general one, for we do not feel impressed with the idea that there is any thing flagrant in the motives of the present defendant. It may.be worth while to observe that we do not mean to trench upon the case of Robinson v. City Council, (2 Rich. 317,) for that case may stand on its own foundation. It might well have presented a different aspect if the city officers had seized the plaintiff’s property, and held the same till he redeemed by a bonus unlawfully demanded, and therefore unconscientiously received. In the case itself an idea is'suggested to sustain it, to this effect: that plaintiff, waiving any contest of his legal right, most voluntarily purchased, ' at a price which the defendant, it is true, had no legal right to enforce, a benefit sought by himself — to wit, that his slaves should be employed within the city limits, himself residing beyond them. We do not perceive thát the case referred to, in principle or in argument, rules the one before us.
Having forgotten to refer, at a more appropriate place, to an English case, it may be well to do so here—Den v. Parsons, 3 B. & Al. 562. It was an action brought by the Sheriff of Herefordshire against one Parsons, an attorney, for the sum of 4 shillings and a penny, against which the defendant Claimed to set off two and sixpence, which his clerk had paid to the plaintiff, on the issuing of three warrants, under one *266 writ, against three defendants. The clerk paid it, on its being claimed by the plaintiff as a right; but on mentioning it to the defendant he disapproved of it, and said it was an imposition. Holroyd, J. held that the plaintiff had a right to fourpence only for each warrant, and he was consequently non-suited. On motion for a new trial it was urged that the money had been paid with a full knowledge of the facts, and therefore could not be recovered. It was replied that the money had been wrongfully exacted, under a claim of right, and it was against good conscience that the plaintiff should retain it. The rule was discharged.
The facts of the case before us are rather meagre. If it should appear that the defendant Durant delivered the negro,, or offered to do so, without making the payment of the sum in contest an indispensable pre-requisite, tíre features of the case might be changed — though we shall conclude nothing on that subject.
We think the plaintiff should not have been non-suited» and a new trial is ordered.
Richardson, J. O’Neale, J. Evans, J. and Wardlaw, J. concurred.
Motion granted.